**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **PATRICK W. HAUSLER,** | |
| **Petitioner,** | **Case No. 11 C 8485** |
| **v.** | **Hon. Harry D. Leinenweber** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Patrick Hausler's Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). For the reasons stated herein, the Petition is denied without an evidentiary hearing.

### I. BACKGROUND

On October 25, 2006, Petitioner Patrick Hausler (the "Petitioner") was indicted for knowingly publishing, advertising and exchanging visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2251(d)(1)(A). On October 31, 2008, Petitioner pled guilty.

At the time of Petitioner's guilty plea, he was released on bond. The conditions of Petitioner's bond included, among other things, appearing at all Court proceedings, wearing an ankle monitoring bracelet at all times, and refraining from accessing the Internet. After his plea, Petitioner informed the Court that while

on bond he would reside at the home of a third party, Pastor Ken Latimore ("Latimore"), who also volunteered to be his custodian.

Four days after Petitioner pled guilty, undercover Special Agent Jim Mooney began an investigation of a file server that was distributing child pornography from an Internet connection in Illinois. This investigation ultimately was traced to the Latimore home where officers executed a search warrant and discovered Petitioner's "massive computer" with a live Internet connection. *See* Tr. of Proceedings June 2009 at 9. Due to the encryption codes on the computer, officers were unable to discover whether the computer had pornographic images.

Days after the search warrant was executed, Petitioner cut his electronic monitoring bracelet and fled. Agents spent over one week trying to locate Petitioner, who fled to California to visit his ex-wife. Later, Petitioner returned to Illinois voluntarily, (allegedly because his lawyer advised him to), where he was arrested.

On June 11, 2009, this Court held Petitioner's first sentencing hearing. During the hearing, the Government presented evidence regarding Petitioner's post-bond conduct and argued that this evidence should prohibit Petitioner from receiving acceptance of responsibility credit under the Federal Sentencing Guidelines. Petitioner's counsel objected, arguing the Government could not prove that Petitioner was distributing child pornography after his

guilty plea.    Petitioner's counsel then requested the Court
continue the sentencing hearing, and requested that the Government
prove up their allegations to grant Petitioner an opportunity to
cross-examine Special Agent Mooney.    The Court granted counsel's
request and continued the hearing.

On October 27, 2009, this Court held Petitioner's second
sentencing hearing.    At the hearing, the Government called Special
Agent Mooney as its first witness.    During direct examination,
Agent Mooney testified how he traced the child pornographic file
server to Petitioner on or about November 4, 2008, and described
how such tracing is possible.    Petitioner's counsel declined to
cross-examine Agent Mooney.

The Government's second witness was Pastor Ken Latimore.    On
direct examination, Latimore testified that he agreed to be
Petitioner's custodian while he was out on bond, and that
Petitioner resided in the basement of his home from early 2007
through November 2008.    Latimore also testified that while
Petitioner lived in his home, he had removed all Internet
connections to abide by the conditions of Petitioner's bond.
Petitioner's attorney cross-examined Latimore, eliciting testimony
that Petitioner participated in group meetings for men dealing with
pornography issues and that when Petitioner fled he left a suicide
note.

- 3 -

After the conclusion of Pastor Latimore's testimony, the Government argued an upward adjustment was warranted due to Petitioner's escape from custody. Petitioner's counsel objected, contending that Petitioner was not attempting to evade justice, but instead was trying to kill himself. This Court agreed with Petitioner, and declined to grant the Government's requested upward enhancement.

The Court then considered whether Petitioner should be granted adjustment credit based on his acceptance of responsibility. The Government argued that Petitioner should not be granted such credit because evidence indicated that he continued to commit the same offense after he pled guilty. Petitioner's counsel did not contest this.

At the conclusion of the sentencing hearing, the Court sentenced Petitioner to 25 years imprisonment followed by a lifetime of supervised release.

Petitioner appealed his sentence to the Seventh Circuit. However, after failing to find a good-faith basis for an appeal, Petitioner's counsel filed a motion under *Anders v. California*, 386 U.S. 738 (1967) seeking permission to withdraw. The Seventh Circuit granted the motion, and dismissed the appeal.

Petitioner chose not to file a writ of certiorari to the United States Supreme Court and instead let the appropriate amount

of time lapse prior to filing this timely 28 U.S.C. § 2255 *habeas* petition.

## II.  LEGAL STANDARD

Under Section 2255 a prisoner may petition the court which imposed his sentence to vacate, set aside, or correct the sentence on the basis that the sentence imposed is in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law. *See Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1992).  To receive relief under Section 2255, a prisoner must show a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979). Alternatively, if a prisoner can show the trial court made "an omission inconsistent with the rudimentary demands of fair procedure," relief can also be provided. *Hill v. United States,* 368 U.S. 424, 428 (1962).

## III.  DISCUSSION

Petitioner argues that his sentence should be modified or vacated because he received ineffective assistance of counsel. Specifically, he argues his counsel was ineffective because his lawyer (1) chose not to file a motion to suppress Petitioner's confession in 2006; (2) failed to examine Petitioner's computer equipment following the 2008 search and failed to properly cross-

examine Agent Mooney; (3) failed to object to the testimony of Pastor Latimore and assert clergy-penitent privilege; (4) failed to provide this Court all character letters at sentencing and failed to call a character witness; (5) failed to argue that it was unconstitutional for Petitioner to be charged under 18 U.S.C. § 2251(d)(1)(A) when Petitioner could have been charged for the same conduct under 18 U.S.C. § 2252A(a)(3); and (6) failed to contest one of the conditions of Petitioner's release.

## A. Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of counsel, a petitioner must make two showings. First, the petitioner must establish that his attorney's representation was objectively unreasonable as measured by prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed [to] the defendant by the Sixth Amendment." *Id.* Second, the petitioner must show that the deficient representation prejudiced his defense such that he was denied a fair trial. *Id.* at 687.

When determining whether counsel's representation was reasonable, the reviewing court is highly deferential to the district judge to eliminate the "distorting effects of hindsight." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

*Id.* Moreover, the Seventh Circuit has held that in order for a habeas petitioner to meet his burden of proving ineffective assistance of counsel he must cite "specific acts or omissions of his counsel" before the court even considers whether the counsel's representation was objectively unreasonable. *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003). In addition to this, even if a petitioner shows that his attorney's representation was objectively unreasonable, he must also demonstrate prejudice. *See Strickland* 466 U.S. at 687. If a reviewing court finds that a petitioner was not sufficiently prejudiced, the adequacy of the representation is irrelevant, and the court need not address the adequacy of his lawyer's representation. *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010).

To establish prejudice when a petitioner pleads guilty to the underlying offense, the petitioner must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Cieslowski,* 410 F.3d 353, 360 (7th Cir. 2005). This showing requires a petitioner to present objective evidence, such as specific misinformation provided by his attorney and/or the history of his plea negotiations that demonstrate he would not have pled guilty but for the attorney's poor advice or wrong information. *See Hutchings*, 618 F.3d at 697.

### 1. *Failure to File a Motion to Suppress*

Petitioner argues his lawyer's failure to file a motion to suppress his 2006 post-arrest statements constitutes ineffective assistance of counsel. Petitioner alleges that his confession should have been suppressed because it was coerced.

"When the claim of ineffective assistance of counsel is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious." *Cieslowski*, 410 F.3d at 360. In *Cieslowski*, a defendant levied an ineffective assistance of counsel claim against his former lawyer for failing to file motions to suppress. When asked why she chose not to file such motions, the defendant's lawyer testified that she "decided against filing a motion to suppress the defendant's inculpatory statements because it would have made little difference considering the overwhelming evidence found on his laptop . . ." *Id.* at 361. Because of this, the Seventh Circuit found the attorney's decision fell "squarely within the realm of strategic choice" and thus, failed to support an ineffective assistance of counsel claim. *Id.*

The Court finds *Cieslowski* comparable to the instant case and finds that notwithstanding Petitioner's failure to provide sufficient evidence that indicates that a suppression motion would have been successful, his lawyer's decision not to file a motion was strategic. Like *Cieslowski*, here, it is undisputed that law

- 8 -

enforcement recovered thousands of pornographic images from Petitioner's computer and hard drive that clearly implicated him in the offense. Thus, it would have made little difference if Petitioner's statements immediately following his arrest would have been suppressed. The Court finds this particularly true in light of the fact that if Petitioner's lawyer filed a motion to suppress and this Court ultimately believed the law enforcement officer over the Petitioner, this could have exposed the Petitioner to an obstruction enhancement at sentencing. As such, the Court finds counsel's decision not to file a motion to suppress "within the realm of strategic choice." *Id.*

### 2. Failing to Examine Computer Equipment and Failing to Cross-Examine Special Agent Mooney at the October 2009 Sentencing Hearing

Petitioner next asserts that his representation was ineffective because his lawyer failed to examine his computer equipment discovered in 2008 to refute the Government's claims that the equipment contained child pornography. He also claims his attorney's failure to cross-examine Special Agent Mooney constituted ineffective assistance of counsel.

> When the allegation of the ineffectiveness of counsel centers on a supposed failure to investigate, we cannot see how, . . . the petitioner's obligation can be met without a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information . . . would have produced a different result.

*United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987).

Here, the Petitioner fails to allege what his attorney would have found if he examined the contents of his computer and fails to argue how this information would have changed his sentence. Instead, Petitioner seems to allege that the Government lied when it represented to the Court that it was unable to obtain the contents within the computer due to encryption codes. Petitioner states, "[i]t is true that the computer had a copy of TrueCrypt encryption software installed, but the mere presence of the software does not prove that it was being used in the way the government says it was." Pet's Supp. Memo. at 10. With regards to this argument, the Court is not persuaded.

While in his filings Petitioner alleges that the Government had access to all his files despite the encryption codes, Petitioner never states that there was not any child pornography on the computer. Instead, he alleges that there "were no encryption keys to turn over" and the Government never found any child pornography. *Id.* at 9-10. The Court finds Petitioner's attorney's decision not to examine the computer similar to his lawyer's decision not to file a motion to suppress. The Court does not find decisions like these rise to the level of unreasonableness as is required under the first prong of *Strickland* and instead finds that in light of the other evidence and circumstances surrounding

- 10 -

Petitioner's case, this decision was strategic. *Strickland*, 466 U.S. at 687-88.

Petitioner next argues that his lawyer's failure to cross-examine Special Agent Mooney at the October 2009 hearing and failure to challenge the Government's claims that the Petitioner's 2006 pornography collection "focused on infants and toddlers" was ineffective. Pet's Supp. Memo. at 10. The Court disagrees.

The Court finds Petitioner fails to establish the requisite prejudice under the second prong of *Strickland* with regard to both arguments. To establish prejudice Petitioner "must shoulder the burden of showing . . . that the errors . . . worked to his *actual* and substantial disadvantage." *United States vs. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

In this case, Petitioner admitted that some of his pornography collection contained images of toddlers and children. He fails to indicate how any challenge his lawyer would have made to the Government's characterization of his pornography collection would have altered his sentence. Similarly, Petitioner fails to elucidate the information his lawyer might have elicited from Special Agent Mooney that would have impacted this Court's proceedings. *See United States v. Lloyd*, 983 F.Supp. 738, 742-43 (N.D. Ill. 1997) (denying a petitioner's habeas petition because the petitioner failed to allege what information his lawyer would have obtained on cross examination and failed to allege how this

information would have changed the outcome of his case.)  As such, the Court rejects Petitioner's arguments.

### 3.   Failure to Assert Clergy-Penitent Privilege

Next, Petitioner contends that his lawyer's failure to assert the clergy-penitent privilege when Pastor Latimore testified was ineffective.  The Court disagrees.

At the outset, the Court reminds Petitioner of the well-established principle that privileges are strictly construed. *Trammel v. United States*, 445 U.S. 40, 50 (1980).  In *Trammel*, the Supreme Court explained that the clergy-penitent privilege is limited to private communications made in confidence and trust and the privilege "recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and receive priestly consolation and guidance in return."  *Id.* at 51.

After reviewing the transcript of Pastor Latimore's testimony, the Court finds that Petitioner's assertions lack merit.

On direct examination, the Government questioned Pastor Latimore about his relationship with Petitioner.  Latimore clearly indicated he was only a mentor to Petitioner, not a counselor.  The transcript states:

> The Court:     Just so I understand, tell me how you
>                distinguish mentoring from counseling.
>
> A:  Mentoring would be more or less of being – being a
>     listener, a listening ear, and spiritual counsel
>     about what direction to take, if I was asked.

> Counseling to me is being more directly involved
> with a person's life where they are sharing the
> most intimate details of their life and you are
> helping them to process it and work through it.

Tr. of Proceedings at 42. [ECF 79].

In addition to this, the testimony to which Petitioner
contends his attorney should have objected involved testimony of a
conversation Petitioner had with Pastor Latimore and his wife hours
after the search began at the Latimore home. During this
conversation, Petitioner apologized to both Pastor Latimore and his
wife for subscribing to the Internet and informed them that he
visited the pornographic websites with the intent of submitting
information to the Government in hopes of getting a reduced
sentence. *Id.* at 40-41.

Not only does the Court find the clergy-penitent privilege
inapplicable here, the Court also finds Petitioner fails to
establish how his lawyer's failure to object to such testimony
caused prejudice. First, the Court is persuaded by Pastor
Latimore's distinction of a mentor and a counselor. When asked to
distinguish between a mentor and a counselor, Latimore testified
that a counselor would be someone who would hear intimate details
of a person's life, and assist that person. The Court finds this
definition similar to the definition the Supreme Court set out in
*Trammel* and finds that Pastor Latimore was clear when he informed
the Court that he did not consider himself to be Petitioner's
counselor.

Additionally, the specific testimony Petitioner takes issue with concerned a conversation between Pastor Latimore and his wife with a law enforcement agent present in the same room. The Court does not find such a conversation to fall under the clergy privilege even if Pastor Latimore was Petitioner's counselor, as this would not be in "total and absolute confidence." *See Trammel*, 445 U.S. at 51. Thus, the Court finds Petitioner's lawyer's decision not to object appropriate, and does not find this decision indicative of ineffective assistance of counsel.

### 4. *Failure to Present Letters and a Character Witness*

Petitioner also argues that his representation was ineffective because his lawyer failed to produce all of the character letters to the Court and failed to call any character witnesses at the October 2009 hearing. Here again, the Court finds Petitioner fails to establish the requisite prejudice under the second prong of *Strickland*.

"Complaints of uncalled witnesses are not favored" in Section 2255 petitions. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1987). Therefore, if the potential witnesses are not called, it is incumbent on the petitioner to demonstrate, with some precision, the content of the testimony they would have provided. "The district court simply cannot fulfill its obligation under *Strickland* to assess prejudice until the petitioner has met

- 14 -

his burden of supplying sufficiently precise information." *DeRobertis*, 811 F.2d at 1016.

Petitioner failed to indicate what the testimony of his proposed character witness would have been and failed to articulate how this could have impacted his sentence. Similarly, Petitioner failed to attach the two character letters his lawyer allegedly neglected to submit to the Court and failed to allege how these letters could have affected his sentence. These facts, taken in conjunction with the fact that Petitioner's lawyer submitted a sentencing memorandum, a psychological report, a report of a mitigation specialist, and other character letters cause this Court to reject Petitioner's argument regarding the omitted letters and the omitted character witness.

### 5. 18 U.S.C. § 2251(d) and Equal Protection

Petitioner argues that his counsel was ineffective for failing to raise the constitutional argument that prosecuting him under 18 U.S.C. § 2251(d)(1)(A) was a violation of the Equal Protection Clause since the Government could have prosecuted Petitioner under 18 U.S.C. § 2252A (a)(3)(B), a statute that carries a less severe punishment. The Court finds this argument lacks merit.

> It is common for one['s] course of conduct to violate multiple statues and yield multiple convictions; it is common too, for either the statutes or the guidelines implementing them to supply different sentencing ranges. When the same acts violate multiple laws, the prosecutor is free to choose one with the highest sentence.

*United States v. Malik*, 385 F.3d 758, 760 (7th Cir. 2004).

- 15 -

Section 2251(d)(1)(a) prohibits any person from knowingly making, printing, or publishing an advertisement seeking to receive, exchange, buy, or produce any visual depiction of a minor engaging in sexually explicit conduct. *See* 18 U.S.C. § 2251(d)(1)(A). Section 2252A (a)(3) prohibits knowingly reproducing any child pornography for distribution or advertising, promoting, presenting, distributing, or soliciting any material that contains an obscene visual depiction of a minor engaging in sexually explicit conduct. *See* 18 U.S.C. § 2252A(a)(3). The Court acknowledges Petitioner's point that both statutes prohibit similar conduct, however, there are distinctions between the two statutes that make Petitioner's equal protection claim meritless.

Most relevant here, the Court finds the use of the word "exchange" in Section 2251 persuasive. In this case, Petitioner pled guilty to hosting a file server where he advertised thousands of pornographic images depicting minors. As part of his file server, he encouraged website users to view his images in exchange for new images. Thus, the Court finds Petitioner was engaging in not just the mere possession or advertisement or pornographic images involving minors, but also was bartering into foreign commerce and using such images as a commodity. This differs from the prohibited conduct in Section 2252A, which only relates to the reproduction of child pornography. *See* 18 U.S.C. § 2252A(a)(b)(3)(B). Thus, the Court rejects Petitioner's argument that the two statutes prohibit

identical conduct and further finds the Government's decision to prosecute under Section 2251 appropriate. *See Malik*, 385 F.3d at 760.

As added support, Petitioner also raised this argument to the Seventh Circuit in his initial appeal. *United States v. Hausler*, 409 Fed. App'x. 4, 9 (7th Cir. 2010). The Seventh Circuit rejected the argument noting, "it is commonplace for prosecutors to choose to enforce the more punitive laws." *Id.* Thus, the Court rejects Petitioner's argument.

### 6. *Condition of Supervised Release*

Finally, Petitioner argues that his counsel's failure to challenge his inability to possess a camera phone or similar device while on supervised release is evidence of his lawyer's ineffective assistance of counsel. The Court disagrees.

First, Petitioner fails to assert how his lawyer's failure to challenge this condition of supervised released caused him actual and substantial prejudice as the second prong of *Strickland* requires. *See Strickland*, 466 U.S. at 687-88; *see also Frady*, 456 U.S. at 170. Next, Petitioner fails to allege that a challenge to this condition would have altered the sentenced this Court imposed. Most importantly, the Court finds Petitioner's argument here inappropriate in the context of a Section 2255 petition. If Petitioner seeks to modify any terms of supervised release, the appropriate course to do so is through a motion with this Court,

and not a petition to modify or vacate his sentence.  *See* FED. R. CRIM. P. 32.1; *United States v. Silvious*, 512 F.3d 364, 370-71 (7th Cir. 2008).

### IV.  <u>CONCLUSION</u>

For the reasons stated herein, the Petition to Vacate, Set Aside, or Correct Sentence is denied without an evidentiary hearing.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 10/26/2012